1  ALEXANDER B. CVITAN (SBN 81746),
   Email: alc@rac-law.com
2  J. DAVID SACKMAN (SBN 106703)
   Email: jds@rac-law.com
3  MARSHA M. HAMASAKI (SBN 102720), Members of
   Email: marshah@rac-law.com
4  REICH, ADELL & CVITAN, A Professional Law Corporation
   3550 Wilshire Boulevard, Suite 2000
5  Los Angeles, California  90010-2421
   Telephone: (213) 386-3860, Facsimile: (2l3) 386-5583
6
7  Attorneys for Plaintiff Construction Laborers Trust
   Funds for Southern California Administrative Co.

8
                    UNITED STATES DISTRICT COURT
9
10      FOR THE CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

11
12  CONSTRUCTION LABORERS                    Case No.: 5:18-cv-00490 JGB (SPx)
    TRUST FUNDS FOR SOUTHERN
13  CALIFORNIA ADMINISTRATIVE                **REPLY BRIEF IN SUPPORT OF**
    COMPANY, a Delaware limited              **SECOND APPLICATION FOR**
    liability company,                       **WRITS OF ATTACHMENT**
14
15                      Plaintiff,
16          vs.
                                             Hearing
17  WEST COAST STRUCTURES, INC.,             Date:    June 11, 2019
    a California corporation dba             Time:    10:00 a.m.
18  WESTERN STRUCTURES; BRIAN                Crtrm:   3 Riverside
    MATHEW SKAJEM, an individual,
19
20                      Defendants.

21
22
23
24
25
26
27
28

355533v5

# I.  INTRODUCTION

Plaintiff[1] brings this Second Application for Writ(s) of Attachment to "address the deficiencies identified" by this Court in the First Applications for Writs of Attachment.  [Docket No. 96 (Writ Order) at p. 20].  As discussed in our Opening Brief (Docket No. 98), those "deficiencies" were not, as a matter of law, deficiencies at all, but we nevertheless addressed them.

In Opposition (Docket No.s 102 and 103) Defendants[2] present no grounds to deny these Writs of Attachment.  Even if their papers are to be admitted and believed,[3] as a matter of law, they present no reason to deny the Writs.

As noted in the Application for Right to Attach Order (Docket No. 97-1), and our Opening Brief (Docket No. 98), we refer the Court to the prior papers and evidence presented.  Of particular relevance here are the Supplemental Declaration of George Moss  (Supp Moss Decl), Docket No. 89, and the Declaration of Darven Walker (Walker Decl), Docket No. 91.

We also note that we have not "dropped" any claims at all.  Rather, we have argued that, in the event this Court, erroneously, rules that there are disputed items included in the damage amounts, we are willing to reduce those amounts *for purposes of this writ application only*, *without prejudice to proving them at trial*.

---

[1]  Construction Laborers Trust Funds for Southern California Administrative Company, as an administrative agent for collection and fiduciary to various multi-employer employee benefit plans ("Trust Funds").

[2]  West Coast Structures, Inc., a California corporation dba Western Structures ("Employer") and its President and Responsible Managing Officer, Brian Mathew Skajem ("Skajem").

[3]  Concurrently with this Reply Brief, we are filing Objections to the Declaration of Brian M. Skajem (Docket No. 103).  In the previous Application, we also filed Objections to Defendants' evidence (Docket No. 94), which were never ruled on.

-1-

355533v5

## II. ARGUMENT

A.   NOTHING HAS BEEN SUBMITTED TO CONTEST THE PROBABLE VALIDITY OF THE CLAIM

The case relied on by Defendants, *Blastrac, N.A. v. Concrete Sols. & Supply*, 678 F. Supp. 2d 1001 (C.D. Cal. 2010), dealt with the "probable validity" requirement of Cal. Code Civ. P. § 481.190(a)(2), which requires that "the plaintiff must show it is more likely than not that it will obtain a judgment against the defendant." 678 F. Supp. 2d 1001, 1005. Not only has Plaintiff shown "it is more likely than not," but there is no dispute at all that Plaintiff "will obtain a judgment against" Defendants.[4/]

Defendants have admitted that they became bound to a collective bargaining agreement which required contributions to the Trust Funds for covered work, and in fact submitted reports and paid some contributions. [Answer to Complaint, Docket No. 60, ¶ 7-9]. We have presented contribution reports, from Defendants, in which they certify the employees and hours for which contributions are due. [Declaration of Yvonne Higa (Higa Decl), Docket No. 73, Ex.s 40-5 to 42-4]. We have presented evidence that some of those reports *from the Defendants* have not been paid. [Higa Decl Ex. A]. We have also presented the First Audit, based on *the Employer's own records*, showing unreported amounts due. [Declaration of Mark Isip (Isip Decl), Docket No. 76, ¶¶ 3-5, Ex. 50]. *See Alaska Trowel Trades Pension Fund v. Lopshire*, 103 F.3d 881, 884-885 (9th Cir. 1996) (employer may be estopped from denying the

---

[4/]  As we discussed in our Opening Brief, the "probable validity" requirement of Code Civ. P. § 481.190(a)(2) should not be confused with the requirement of a "fixed or readily ascertainable amount" in Code Civ. P. § 483.010(a). *See CIT Grp./Equipment Fin., Inc. v. Super DVD, Inc.*, 115 Cal. App. 4th 537, 8 Cal. Rptr. 3d 927 (1st Dist. 2004) ("uncertainty as to the specific amount of ultimate damages is not a basis to deny attachment.")

355533v5

1   veracity of their own records).  Defendants have presented NOTHING to contradict

2   these facts.  There is NO dispute that Plaintiff "will obtain judgment" against

3   Defendants.

4       All that Defendants even attempt to do here is contest the *amount* of judgment.[5/]

5   All Defendants contest here are contributions in the First Audit for "foremen" and for

6   unspecified "non-union" employees.  Both of these contentions fail, as a matter of

7   law.

8

9   B.    THE COLLECTIVE BARGAINING AGREEMENT CLEARLY REQUIRES

10      CONTRIBUTIONS FOR "FOREMEN" INCLUDING DARVEN WALKER

11

12      As we previously explained, contributions for "foremen" are clearly and

13  specifically required by the collective bargaining agreement.  [Supp Moss Decl ¶ 3].

14  Article II.A of the collective bargaining agreement (Ex. 5A to the Supp Moss Decl)

15  provides that "Employees and persons employed to perform work covered by this

16  Agreement *specifically include Craft Foremen*."  [Ex. 5A, Docket No. 89-1 at p. 7,

17  *emphasis added*].  There is an entire Article (XV) of the agreement devoted to the

18  working conditions of foremen, (Id. at p. 8) and their wage rate is set at a specific

19  amount over "the highest paid Laborer" in their crew (Id. at p. 9).

20      Yet Defendants continue to argue that they do not owe contributions for

21  "foremen," without any support at all.  They even go so far as to accuse Darven

22  Walker of "fraudulent statements" as to whether he worked as a foreman.

23  [Declaration of Brian M. Skajem (Skajem Decl), Docket No. 103, ¶¶ 4-5].  In fact,

24  Mr. Walker truthfully testified that he "worked as a Laborer and Laborer Foreman."

25  _____

26  [5/]  We note that the amount sought in these Writs is less than the amount we will seek
    for a final judgment.  The Writs do *not* include damages found to be due in the audit
27  which is still pending.  The Writs do *not* include any damages for hours worked after
    June 2018, when Defendants claim (and we deny) that the collective bargaining
28  agreement terminated.  Any of those issues are not relevant here.

355533v5

[Walker Decl ¶ 3].  As a foreman, he was covered by the collective bargaining agreement, and contributions were due on his behalf.  In fact, the Employer reported Walker as covered, recognizing that they were obligated to pay contributions for him.  [*See, e.g.*,  Higa Decl Ex. 40-5, Docket No. 73-5 at p. 2].

While "foremen" are specifically included, "superintendents" are explicitly excluded  [Ex. 5A, Art. II.A., Docket No. 89-1 at p. 6].   A "Superintendent" excluded from coverage is defined as "an employee who does not work with the tools of the trade and who may supervise employees working at the trade."  [Id. Art.I.A.6, at p. 5].  Mr. Walker testified that he "always worked with the tools of the trade, alongside the other laborers" that he "never worked as a Superintendent" and that he "never had authority to hire or fire other workers on my own." [Walker Decl ¶ 3].  Skajem claims this is "false" because Walker "repeatedly sent workers offsite," whatever that means.  Even if Skajem is to be believed, this does not contradict Walker's statement, and has no relevance to the definition of a "Superintendent" in the agreement.

The evidence offered in opposition here only confirms that Walker and others were employed as "foreman," a position specifically covered by the collective bargaining agreement.  Since the agreement clearly requires contributions for "foremen" they have effectively admitted the contributions claimed.

C.    THE NEW DEFENSE OF "NON-UNION" EMPLOYEES FAILS AS A MATTER OF LAW

Skajem also claims, for the first time, that the "bulk of the dispute at issue in this matter involves non-union workers" and that the Employer "paid the fringe benefits to the employees rather than into the trust." [Skajem Decl ¶ 8].  He does not explain what "non-union workers" means, does not identify the workers or hours in dispute, nor provide any proof that fringe benefits were paid directly to the employees.  The "email chain" he refers to as Exhibit 3 (assuming it is even admissible) refers to

-4-

no such thing.  Even if he had provided any such evidence,[6/] it would be reversible error for this Court to recognize such a defense.

In *Trustees of the So. Cal. IBEW-NECA Pension Trust Fund v. Flores*, 519 F.3d 1045 (9th Cir. 2008), the employer made the same defense of "non-union employees" as not being covered.  The Ninth Circuit reversed this District Court for admitting parole evidence and recognizing such a defense.  As here, there was no basis for a "non-union employees" defense in the collective bargaining agreement.  As here, the collective bargaining agreements establish coverage by job classification, and "provides a detailed list of excluded job classifications." 519 F.3d 1045, 1047.  "When a collective bargaining agreement defines covered employees by job classification, it generally covers "all employees within those classifications, regardless of union membership."" *Id.*, *quoting Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 318 (6th Cir. 1984).  "The district court erred by considering extrinsic evidence that contradicted these unambiguous terms" and the case was reversed.  *Id.* at 1048.

As to the claim that the Employer "paid the fringe benefits to the employees rather than into the trust," this also fails as a matter of law, even if there were any evidence to support it.  "The payment of cash to nonunion employees, however well-intentioned such payment may have been, does not excuse the obligation to make contributions to the funds." *Audit Services, Inc. v. Rolfson*, 641 F.2d 757, 761 (9th Cir. 1981); *see also*, *Brogan v. Swanson Painting Co.*, 682 F.2d 807, 809 (9th Cir. 1982) (same, *quoting Audit Services*).  This is because "the essential purpose of section 515 [of ERISA, 29 U.S.C. § 1145] would be far too easily circumvented if an employer could unilaterally stop making contributions to an employee benefit plan as required by the CBA and the plan documents, and defend such action on grounds that it

---

[6/] Since such evidence has never been presented in any disclosures, Defendant "is not allowed to use that information or witness to supply evidence" in this motion.  Fed. R. Civ. P. 37(c)(1).

provided some form of substitute coverage for its own employees." *MacKillop v. Lowe's Market, Inc.*, 58 F.3d 1441, 1446-1447 (9th Cir. 1995), *cert. denied*, 516 U.S. 1113 (1996).  All these defenses fail as a matter of law.

## D.      ANY CLAIM OF EXEMPTION IS IRRELEVANT AT THIS TIME

Defendants attempt to establish exemptions, based on the Skajem Declaration. However, any possible "exemptions" are irrelevant at this point.

"Exemptions" as to writs of attachment and enforcement of a judgment are generally dealt with in Calif. Code Civ. P. §§ 703.010-704.995.  Since these "exemptions provided by this chapter apply only to property of a natural person" they cannot apply to the Employer, a corporation.  Code Civ. P. § 703.020(a).

As to Skajem, the Writ we seek is only to establish a lien on his real property,[7/] and any pending court cases.[8/]  [Application for Right to Attach Order, Docket No. 97-2, ¶ 9, at p. 2].  Any exemptions he may claim on those properties will only become relevant if and when we seek to foreclose or collect on those liens.

If it were relevant, the Skajem Declaration and his attached Financial Statement (Docket No. 103-5) are incorrect and incomplete.  He discusses at length the expenses for his "girlfriend."  However, there is no exemption in the Code (Code Civ. P. §§ 703.010-704.995) for a "girlfriend."  More disturbing is that he does not account for, or even mention the sale of the business site, which was completed before this Court issued its Writ Order.  [Declaration of J. David Sackman in Support of Second Application for a Writ of Attachment (Sackman Decl), Docket No. 100, ¶ 6; Exhibit A thereto].  Skajem cannot claim any exemptions if he is hiding funds from the Court.

---

7/  *See* Calif. Code Civ. P. §§ 487.010(c)(1) and 488.315.

8/  *See* Calif. Code Civ. P. §§ 487.010(c)(2) and 491.410.

355533v5

III. CONCLUSION

Because of the delay, and erroneous denial, of the first Writ Application, Skajem was able to sell the real property on which the Employer operates before a lien could be placed on it.  We do not know what happened to that money, and Skajem is not telling anyone.

There is no reason for further delay.  There still may be time to place liens on the pending court actions and the remaining real property.  This Second Writ Application should be granted *forthwith*, as to both the Employer and Skajem, for the full amount of $676,575.34, plus attorney fees of $9,713.20, plus costs of $200.00, totaling $686,488.54.  Otherwise, the final judgment in this case may be no more than a piece of paper.

Respectfully submitted,

DATED: May 28, 2019

J. DAVID SACKMAN
REICH, ADELL & CVITAN
A Professional Law Corporation

By:   /s/ J. David Sackman
J. DAVID SACKMAN
Attorneys for Plaintiff

355533v5